[No. 4200.]

FISHEL v. GODDARD ET AL.

30 147
c20a 459
c20a 460

1. **Corporations—Liability of Directors—Purchasing Corporate Assets.**

The purchase of corporate assets by a director of the corporation may not be void ab initio as to creditors, but he will not be permitted to reap a benefit from such purchase to the detriment of creditors, and if he does purchase corporate assets he must account to those who have a right to demand it for the full value of the property purchased.

2. **Same—Chattel Mortgage.**

Where the director of a corporation, at the foreclosure of a chattel mortgage to which he was not a party, purchased a stock of goods belonging to the corporation at a price much less than the value thereof, he is liable to the creditors of the corporation

for existing debts to the amount of profits of the purchase measured by the difference between the actual value of the property purchased and the sum paid therefor.

3. Same—Trusts and Trustees—Fraud.

A director of a corporation is a trustee of the corporation and the direct profits growing out of a purchase by him of corporate assets belong to his principal, and an appropriation by him of such profits, as to existing creditors, is fraud in law against their rights, and he is liable to such creditors to the amount of such profits without a showing of actual fraud in the purchase of the corporate assets.

4. Practice — Pleading — Supplemental Complaint — Creditors' Bill.

In an action in the nature of a creditors' bill by creditors of a corporation to recover from a director of the corporation on account of assets of the corporation alleged to have been purchased by said director at less than their value, a supplemental complaint which alleged that on a date long subsequent to the purchase by defendant of such assets plaintiff secured a further judgment against the corporation upon which execution was returned nulla bona and prayed that the allegations of the original complaint be taken as if contained in the supplemental complaint, was a violation of the rules of pleading and should have been reformed if objected to at the proper time in the trial court. But it is not subject to the objection that it fails to state a cause of action because it does not appear that the debt upon which the judgment was rendered was in existence at the time of the purchase of the corporate assets by defendant, where that fact does appear in the original complaint.

5. Appellate Practice—Interlocutory Order.

An interlocutory order which has no prejudicial effect on the final disposition of the case, even though erroneous, is not sufficient to justify a reversal of the case.

6. Creditors' Bills—Evidence—Book Accounts—Value.

In an action by the creditors of a corporation to recover from a director of the corporation on account of assets of the corporation alleged to have been purchased by the director at less than its value, where defendant testified that the property was not worth more than he paid for it, it was proper to permit defendant to be cross-examined as to what his books disclosed with respect to the amount he had realized from the sale of the property in question. Where there was a conflict of evidence as to the value of the property it was proper for the court to consider as corroborative testimony what sum had been subse-

quently realized from the sale of the goods for the purpose of determining their value at the time of defendant's purchase.

**7. Appellate Practice—Findings—Presumption.**

In an action in the nature of a creditors' bill against a director of a corporation on account of assets of the corporation having been purchased by the director at less than their value, a finding of the trial court as to the value of the property will be presumed to be of its value at the time of the purchase by defendant, unless it affirmatively appears that the value found was of some other date.

**8. Creditors' Bills—Director of Corporation Purchasing Corporate Assets—Credits.**

In an action by the creditors of a corporation against a director to recover the profits made by such director in the purchase of corporate assets where the defendant had compromised some of the corporate debts at less than their face value he is entitled to credit for the amount he paid out on such claims and not for the amount of the claims. And where the evidence fails to disclose how much was paid on such claims, and the margin between the value of the property as found by the trial court and the amount shown to have been paid on the corporate debts is sufficient to cover the amount of the judgment against defendant it will be sustained.

**9. Same—Practice—Parties—Dismissal.**

In an action by the creditors of a corporation to recover the profits of a purchase of the corporate assets by a director of the corporation wherein the corporation and other directors alleged to have participated in the purchase were made parties defendant, and the defendants filed an answer in which the purchasing director joined wherein it was alleged that none of the other defendants ever purchased or acquired any interest in the property, the defendant who purchased the property cannot complain that the action was dismissed as to his codefendants.

*Appeal from the District Court of Arapahoe County.*

Messrs. BARTELS & BLOOD and Mr. A. B. SEAMAN, for appellant.

Mr. ROBERT W. BONYNGE, for appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court.

This is an action in the nature of a creditors' bill, commenced by appellees, judgment creditors of the Fishel-Schlichten Importing Company, a corporation, for an accounting and to recover from Gilbert B. Fishel and others named, who were directors of the corporation, the amount of their judgments, on the ground that they had converted assets of the company to their own use in excess of such judgments. This, it was claimed, had been effected by the appellant, acting in concert with certain of his co-directors, in purchasing at a mortgage sale goods of the company, for a sum less than their full value, and the object of the action is to compel appellant to account for the profits on these goods up to the amount of the judgments of plaintiffs. To the action the company and others were made parties defendant. An accounting against all the defendants was prayed, and judgment against such of them as had derived any benefit from the assets in controversy. From a judgment in favor of plaintiffs against Gilbert B. Fishel, and dismissing the action as to the other defendants, Fishel brings the case here for review on appeal.

The discussion of several different propositions by counsel for appellant is based primarily on the one that, in the absence of an averment of fraud against the company, and the proof of fraud on the part of the directors and the company, a cause of action was neither stated nor proven. We shall first determine this question, as it disposes of all argued on behalf of appellant except those specially noticed later.

Plaintiffs base their right to a recovery against the appellant substantially upon the ground that he has misappropriated or wrongfully diverted assets of the corporation to their injury. Their counsel say "We are seeking a personal judgment against

the director for the gains and profits which he made out of goods, which in equity and good conscience should have been subjected to the payment of our claim, but the title to which, through the medium of the chattel mortgage sale, passed to the director, which put the goods beyond our reach through any ordinary legal process, as is shown by the return of our execution against the company wholly unsatisfied." In view of the theory upon which counsel for plaintiffs contend that the judgment should be affirmed, we do not deem the question of actual fraud necessarily material, and in stating the pleadings and substance of the evidence, shall exclude all matters bearing on that subject.

According to the amended complaint it appears that the company had a stock of goods of the value of $30,000; that its directors caused a chattel mortgage to be executed by the company upon this stock for the purpose of securing an indebtedness due a general creditor of the company; that thereafter they caused the company to execute another chattel mortgage on the same stock to one of their directors, to secure him on account of the endorsement of promissory notes, aggregating the sum of $7,500; that this mortgagee took possession of the mortgaged goods, subject to the prior mortgage, advertised the property for sale under his mortgage subject to the first one, at which sale the property was bid in by appellant, also a director of the company, for the sum of $2,000, subject to the first mortgage; that at the time of this purchase the indebtedness due plaintiffs, which is the basis of their judgment, was in existence, and that it was subsequently reduced to judgment and execution issued thereon, which was returned *nulla bona*.

For answer the defendants deny that the stock of goods purchased at the mortgage sale was worth

the sum of $30,000, and say it was not actually worth to exceed the sum of $8,000. On the trial of the issues thus made, plaintiffs introduced the testimony of one of the directors, who stated, in substance, that at the time of the sale of the stock under chattel mortgage, it was reasonably worth the sum of $30,000. There was also introduced copies of two trial balances, taken from the books of the company, and dated a few weeks prior to the sale, in each of which this stock of merchandise was stated to be worth a little over $25,000. Between the dates of these statements and time of sale there does not appear to have been any change in the stock, unless it can be said that it was increased. There was testimony on behalf of the defendants to the effect that at the time it was sold under the chattel mortgage, it was not worth over $7,000 or $8,000. The court found that the value of the goods purchased by appellant at the chattel mortgage sale greatly exceeded the amount of his bid, and that this excess was more than sufficient to cover the amount due the plaintiffs upon their judgments. As already noticed, plaintiffs base their right to recover against the appellant upon the ground that he has appropriated to his own use profits on the goods purchased at the mortgage sale, which profits, in equity and good conscience, belonged to the company, and constituted part of its assets. If facts are alleged in the complaint from which this conclusion can be deduced, and the testimony tends to establish these facts, or supports those found by the court, within the issues made by the pleadings which, in law, constitute a misappropriation or wrongful diversion of the assets of the corporation by appellant in the manner claimed, then a cause of action is both pleaded and proven.

The relationship of a director of a corporation to the legal entity which he represents is fiduciary, and

the law treats him as a trustee in this respect.—*Morgan v. King,* 27 Colo., 539. A purchase by him of corporate assets may not be void *ab initio* as to creditors, but he will not be permitted to reap a benefit to their detriment by dealing in them as a third party, because the law inhibits a trustee from speculating in the subject matter of his trust. Hence, it follows, that if he does purchase corporate assets he must account to those who have the right to demand it for the full value of the property so purchased. *Goddard v. Importing Co.,* 9 Colo. App., 306; *Tobin Canning Co. v. Fraser,* 81 Texas, 407.

In this instance the appellant, at a sale under a mortgage to which he was not a party, became the purchaser of property belonging to the company, at a time when he was a director of that concern, which the court found was fairly and reasonably worth, at the time of the purchase, many thousands of dollars in excess of the sum bid, and in excess of the amount of plaintiff's judgments. The evidence fully sustains this finding. The sale may have been regular in all respects, the mortgage entirely valid, but when he assumed to act for himself in purchasing the assets of the corporation, he was not thereby relieved of the responsibilities and duties which the law imposed upon him as a trustee. He could not abrogate his fiduciary character in this respect temporarily, in whole or in part, so as to relieve himself from the duties which he owed his principal. He was still trustee when he undertook in any manner to perform acts in connection with the trust estate, so that, whatever profits were in the transaction, measured by the difference in the sum paid and the actual value of the purchase, belonged to the corporate entity, and not to him. The reason for this conclusion is manifest. It was his duty to give the company the benefit of his best judgment and care in

the management of its affairs; he had no right to utilize its assets, except to advance the interests of his company. He was required by reason of his re-. lationship to the company to have the property sold produce the highest price, and to that end, use the knowledge he had derived from the confidence reposed in him as director. If he could employ this knowledge for his own advantage the company would not have the benefit of his disinterested action. Self-interest would prompt him to prefer himself, at the expense of his principal.—Morowitz' Private Corporations, §§ 517-518. We have noticed that appellant was not a party to the mortgage under which the purchase was made, because that is the fact. Whether or not, if he had been, would change the situation, we do not determine, because that question is not presented.

The judgment creditors of the corporation have the right to subject that which belongs to the judgment debtor to the payment of their debts. The misappropriation of corporate funds by a director renders the director making such appropriation personally liable to the existing creditors of the corporation.—*Nix v. Miller,* 26 Colo., 203. He must, therefore, respond to the plaintiffs on account of their claims up to the extent that he has funds in his hands belonging to the company. In reaching this conclusion, the question of actual fraud is eliminated, and the responsibility of appellant is based primarily upon the ground that as a director he was a trustee of the corporation. As such trustee, the direct profits growing out of the purchase by him of corporate assets belongs to his principal, and an appropriation of such profits as to existing creditors is fraud in law, as against their rights. Counsel for appellant contend that under the doctrine laid down in *Crymble v. Mulvaney,* 21 Colo., 203, the creditors

of a company cannot question this transaction, because in that case it was held that the directors of a corporation, as against creditors, may purchase its assets. It was held in that case that as to creditors, the action of directors in purchasing the assets of their corporation was not void *ab initio,* and could not be impeached except for actual fraud, and as that was absent the creditors had no cause of action. The questions there presented and decided were entirely different from the case at bar. The responsibility of appellant is not based upon the ground that the mortgage under which he purchased was fraudulent in law or in fact, but solely upon the ground that he has appropriated to his own use profits which belonged to the company.

It is also claimed by counsel for appellant, on the authority of *Jones v. Bank of Leadville,* 10 Colo., 464, and *Breene v. Merchants' Bank,* 11 Colo., 97, and cases cited from the court of appeals, that the so-called "trust fund theory," as applied to the assets of a corporation, is not recognized in this state, and therefore, the action of the directors in causing the company to execute the chattel mortgage under which appellant purchased, as well as his purchase, cannot be questioned by the plaintiffs. The doctrine announced in those cases has no application whatever to the case at bar. It was held in those cases that the assets of an insolvent corporation do not constitute a trust fund for *pro rata* distribution among its creditors, as against those who had previously acquired a lien upon such assets. No such question is presented in this case. There is no attempt to impeach the chattel mortgage under which appellant purchased, or hold him responsible upon the theory that the company had no right to prefer a creditor. The plaintiffs are merely seeking to subject to the payment of their claims assets which, in law, as to them belonged to their judgment debtor.

Several other cases, including *Twin Lick Oil Co. v. Marbury,* 91 U. S., 587, are cited by counsel for appellant in support of their argument that transactions of the character under consideration are not inhibited, and cannot be impeached except for actual fraud. An examination of these cases will disclose that it was held, as we have indicated in this case, that the purchase by the director was not void, and such transactions were upheld because it appeared that the purchasing director, in connection with the conditions under which the purchase was effected, had paid fully and fairly what the property was worth. So, in this case, if the latter condition existed, the appellant could not be held responsible to the plaintiffs.

It is also claimed on behalf of appellant that the supplemental complaint does not state a cause of action. In this pleading it is charged that on a date long subsequent to the purchase by appellant plaintiffs procured a further judgment against the company upon which execution was issued and returned "no property found," and prayed that their allegations in this respect may be taken in connection with the allegations in the original complaint with the same force and effect as if contained therein. This pleading certainly violates well known rules. It should have been reformed in the court below, and doubtless would, had appellant taken the proper steps to that end. The reason assigned why this complaint does not state a cause of action is, that it does not appear that the indebtedness which is the basis of the judgment mentioned was in existence at the time of the purchase by appellant. This claim is not tenable. This pleading is made a part of the original complaint in so far as all allegations, except those contained within itself, are concerned. Hence, it appears by reference to the complaint of

which it is made a part, that the indebtedness in question was in existence at the time appellant made his purchase.

On the trial of the case, appellant was a witness in his own behalf. He had testified that the goods were not worth more than the sum bid. On cross examination he was required to produce his books of account. This it is claimed, was error. It appears that previous to the trial a notice had been served upon him by plaintiffs for the production of certain books of account, which, it is claimed, was insufficient. The question of whether or not the court erred in requiring the appellant to produce his books or whether the notice mentioned was sufficient upon which to base an order to this effect, is immaterial. The order was interlocutory, and even if erroneous, as claimed, did not have any prejudicial effect upon the disposition of the case upon its merits.—*Colo. F. & I. Co. v. Four Mile R. Co.*, 29 Colo., 90; 66 Pac., 902.

In this connection it is also argued that the court erred in allowing appellant to be cross examined on the subject of what his books disclosed with respect to the amount he had realized from the stock in question. This examination was both regular and proper. While it may be true, as claimed by counsel for appellant, that the value of the purchase should not be determined from the sums which had been realized at sales by retail, extending over a considerable period, where the sales were made in connection with other goods bought from time to time to replenish the stock, nevertheless, in view of the statement by appellant, on direct examination, that the stock in question was not worth more than he paid, it was proper for the purpose of testing his knowledge and the correctness of his statements in this respect, to show, as a matter of fact, what amount had been realized from their sale.

It is urged, however, that the opinion and decree of the trial court discloses that only this character of evidence was considered in determining the inadequacy of the consideration paid by appellant. This claim is not supported by the record. There being a conflict in the testimony regarding the value of the stock, it was entirely proper as corroborative testimony, for the court to consider what sum had been subsequently realized from the goods for the purpose of determining their value at the time of appellant's purchase. This is what the court did. It is also said the court did not find what the goods were worth at the time of the sale. It does not appear that the value found was of any other date, and in the absence of unambiguous and specific findings to the contrary, we must presume that the trial court found those facts necessary to support the judgment.—*Mining Co. v. Tribe,* 29 Colo., 302.

It is also urged on behalf of appellant that the court erred in entirely disregarding all equities in favor of appellant. He appears to have discharged the first mortgage in the sum of $6,000, and paid off the indebtedness secured by the second. These sums would aggregate $13,500. It is also claimed that he discharged other indebtedness of the company, for which he is entitled to credit. On this subject it appears from his own testimony that when he paid the old accounts of the company he made the best settlement he could and took assignments to himself. What amount he may have paid on these accounts is not made to appear. That is all that he could take credit for. If he settled claims of his principal for less than the face out of funds belonging to the company, the benefit of such settlements must be given his principal. However, this question is not material, for the record does not disclose how much he may have paid in the way of settling

accounts, except those secured by the two mortgages, and under the finding of the court as to the value of the purchase, the difference between the amount of the two mortgages and such value leaves an ample margin from which to satisfy the claims of plaintiff.

Finally, it is contended on behalf of appellant that the court erred in rendering a decree in favor of plaintiffs, because, as we understand the argument, appellant was the only one found guilty of fraud, and that judgment could not be rendered against appellant alone. We have already disposed of this question in a former part of the opinion, and stated the reasons why, under the pleadings and the facts found by the court, appellant is responsible to the plaintiffs. From any point of view, however, appellant certainly can not complain that his codefendants were dismissed. Charles S. Davis was made a party defendant, it being claimed that he had been a party to the transactions by which the assets in controversy were diverted. The Fishel Importing Company, a corporation, was also made defendant, it being claimed that it was organized by the appellant and two of his co-directors, and that the goods purchased by him were transferred to it. In the answer filed by defendants, in which appellant joined, it is alleged that none of the defendants, except appellant, ever purchased or acquired any interest in the property purchased at the mortgage sale. In the face of this declaration on his part, he cannot complain that his codefendants were dismissed without day, when, according to his own statements, they are not responsible to him for anything growing out of the transaction in question. They cannot be heard to say that he is responsible to them when they, in effect, disclaim any interest in the subject matter of controversy by asserting there is

none. According to the pleadings of the defendants in which appellant joined, he was the only one—eliminating all questions of actual fraud—personally responsible to the plaintiffs, if any responsibility was established. The judgment of the district court is affirmed.

*Affirmed.*

Mr. JUSTICE STEELE not participating.

### On Petition for Rehearing.

*Per Curiam.*—In stating reasons why appellant cannot complain of the order of the court in requiring him to produce certain books of account we should have said, in substance, instead of the language employed, that erroneous interlocutory orders which do not prejudice the rights of the party against whom made, are insufficient to reverse a cause on appeal. The original opinion has been so corrected.

It was not necessary to consider the cases cited by counsel for appellant from the court of appeals and this court, which it is claimed hold that directors, when secured by the corporation they reperesent, have all the rights of creditors in enforcing their security. No question calling for a discussion of this proposition is presented. Appellant was not the mortgagee, and that is why it was stated in the original opinion, he had no personal interest to protect. True, he was a co-endorser with the mortgagee of notes on account of which the mortgage was given to the latter as indemnity, but this was an immaterial fact, and therefore, not mentioned, because appellant was simply a bidder at a sale conducted for the benefit of another under a chattel mortgage to which he was not a party. It would have been more nearly accurate, as well as sufficient, to have said that appellant was not a party to the mortgage,

and the opinion has been corrected in this respect.

At the original hearing our attention was called to the fact that appellant was a co-endorser with the mortgagee of the company notes and that the mortgage was given to indemnify them on account of such endorsement. And by reason of this personal liability it was then argued that appellant in dealing with his company might, to some extent at least, relieve himself of the duty which ordinarily is imposed upon a director of a corporation. But in the original briefs of appellant we do not find advanced some of the legal propositions which counsel, appearing for the first time in support of this petition, now contends should be applied to the case, because of that circumstance; we therefore decline to consider them.—*Morgan v. King, supra.*

The chattel mortgage has neither been ignored nor impeached; but on the contrary, it is upheld. Appellant has not been deprived of his purchase, or of any money advanced on that account, but is simply held responsible for the direct profits growing out of the transaction. This conclusion, based as it is upon the particular facts in this case, does not in any manner conflict with any previous decisions of either the court of appeals or of this court, and is abundantly supported by authorities from other states. In fact, counsel for appellant in their briefs concede this to be the law in other jurisdictions. They say: "There is only one theory and we concede that that theory exists in some states, namely, that by virtue of the fiduciary capacity of a director to a corporation, he is absolutely prohibited from bidding at a sale of the property of the corporation, even though it be sold at a judicial sale, or under a mortgage, or any other lien, unless he pays the full value of the property, to which an appeal could be made to in any way jeopardize the rights of Fishel in this transaction."

In addition to what has already been said we deem it proper to comment upon the assertion of learned counsel for appellant that by this decision we are, without directly saying so, yet in effect, overturning a long line of decisions of this court and our court of appeals. The cases particularly referred to are *Crymble v. Mulvaney, supra*, and *West v. The Hanson Produce Company*, 6 Colo., App., 467. In the Crymble case a sale of the corporate property to a director was upheld as against the creditor. But it appeared that the sale was for an adequate consideration and in that particular, as well as in the character of the action, that case materially differs from the one at bar.

In the West case the only point actually decided, and the only one involved, was that an insolvent corporation might apply its property to the payment of its just debt to a creditor, and thus prefer the latter. In the course of the opinion the writer said: "The great weight of modern authority is to the effect that, as individuals, the officers of a corporation can loan it money, or legally, in any other proper way, become its creditors *and deal with it in the same manner as with an outsider.* If such is the law,—and it seems to be where there is no statutory prohibition,—it logically follows *that the right to become a creditor carries with it all the rights of a creditor,* and authorizes the corporation to prefer the officer if it sees fit."

Upon the parts of this excerpt which we have italicized appellant bases his contention. And it is to be said that if the law is as there declared he ought to prevail, for the record shows that his every act in this transaction is covered by that declaration, and apparently he relied upon its protection. That these observations are dicta the facts as stated in the opinion abundantly show. That being true,

they are not authority as precedents, and if good at all, are so because they commend themselves to the judicial judgment   But that our position may not be misunderstood, we say that had such a doctrine been necessarily included in the decision made, we would not follow it   It goes beyond anything this court has decided   It is not good morals or good law.   It is not necessary here to lay down a general rule to govern a director in all possible dealings with his company.   We have upheld this transaction to the extent of holding valid the chattel mortgage; but we say that when a director buys at such a foreclosure sale he acts at his peril, for he then has a duty to his company to discharge, and if he buys for less than the property of the corporation is worth he must respond to it and its creditors.

If in previous decisions of this court or the court of appeals anything contrary to this doctrine has been announced, it must give way.   The cases cited in the opinion from this court foreshadow the doctrine herein declared, and it is well to recall to the profession that this court, as at present constituted, adheres to the principles therein enunciated, and is not disposed to adopt the rule, which has been subject to much criticism, apparently sanctioned, though not authoritatively declared, in the West case, and for which appellant so strenuously contends.

*Petition for rehearing denied.*

Mr. JUSTICE STEELE not participating.